IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAULA JEAN BROWN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 21-1593 |
| | ) |
| KILOLO KIJAKAZI, | ) |
| *Acting Commissioner of Social Security*, | ) |
| | ) |
| Defendant. | ) |

O R D E R

AND NOW, this 10th day of March, 2023, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 17) filed in the above-captioned matter on June 17, 2022,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 15) filed in the above-captioned matter on May 17, 2022,

IT IS HEREBY ORDERED that said Motion is GRANTED. Accordingly, this matter is hereby remanded to the Commissioner of Social Security ("Commissioner") for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

**I.      Background**

Plaintiff Paula Jean Brown protectively filed a claim for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 1381 *et seq.*, effective October 14, 2019, claiming that she became disabled on January 1, 2008,[1] due to Raynaud's syndrome, bursitis, vision problems, bipolar disorder, depression, and an ankle

---

[1]      Despite this claim, because Plaintiff is seeking SSI benefits, she did not become eligible for benefits until the month following the filing of her application. *See* 20 C.F.R. § 416.335.

problem.  (R. 16, 219-27, 244).  After being denied initially on February 26, 2020, and upon reconsideration on September 4, 2020, Plaintiff sought, and obtained, a telephonic hearing before an Administrative Law Judge ("ALJ") on March 29, 2021.  (R. 16, 142-46, 148-52, 153, 28-70).  In a decision dated June 9, 2021, the ALJ denied Plaintiff's request for benefits.  (R. 16-32).  The Appeals Council declined to review the ALJ's decision on August 31, 2021.  (R. 2-4).  Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

## II.  Standard of Review

Judicial review of a social security case is based upon the pleadings and the transcript of the record, and the scope of that review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact.  *See* 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001) (noting that "'[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive'" (quoting § 405(g)); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999) (stating that the court has plenary review of all legal issues, and reviews the ALJ's findings of fact to determine whether they are supported by substantial evidence).  If the district court finds this to be so, it must uphold the Commissioner's final decision.  *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).  The Court may not set aside a decision that is supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing § 405(g)); *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986)).

"Substantial evidence" is defined as "more than a mere scintilla." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). However, a "'single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). "'Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.'" *Id.* So as to facilitate the district court's review, an ALJ's findings must "be accompanied by a clear and satisfactory explication of the basis on which [they] rest[]." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Decisions that are conclusory in their findings or indicate the ALJ's failure to consider all the evidence are not supported by substantial evidence. *See id.* at 705-06. Moreover, the Court must ensure the ALJ did not "reject evidence for no reason or for the wrong reason." *Id.* at 706 (citing *King v. Califano*, 615 F.2d 1018 (4th Cir. 1980)).

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period. *See Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" *Id.* at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration has promulgated regulations incorporating a five-step sequential evaluation process in guiding ALJs in determining whether a claimant is under a disability as defined by the Act. *See* 20 C.F.R. § 416.920. At Step One, the ALJ must determine whether the claimant is currently engaging in substantial gainful activity. *See id.* at § 416.920(a)(4)(i). If so, the disability claim will be denied. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. *See* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." *Id.* at § 416.922. If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have a severe impairment, however, the ALJ must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. *See id.* at § 416.920(a)(4)(iii). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

In considering these steps, the ALJ must formulate the claimant's residual functional capacity ("RFC"). A claimant's RFC is defined as the most that an individual is still able to do despite the limitations caused by his or her impairments. *See Fargnoli*, 247 F.3d at 40; 20 C.F.R. § 416.945(a). At Step Four, it is the claimant's burden of demonstrating an inability to perform his or her past relevant work. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). If the ALJ determines that the claimant lacks the RFC to resume his or her former occupation, the evaluation then moves to the fifth and final step. *See* 20 C.F.R. § 416.920(a)(4)(iv).

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. *See id.* at § 416.920(a)(4)(v). In making this determination, the ALJ must consider the claimant's RFC, age, education, and past work experience. *See id.* The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. *See id.* at § 416.923.

### III.  The ALJ's Decision

In her June 9, 2021 decision, the ALJ applied the sequential evaluation process and found that Plaintiff had not been engaged in substantial gainful activity since October 14, 2019, the application date. (R. 18). The ALJ also found that Plaintiff met the second requirement of the process insofar as she had several severe impairments, specifically left eye vision loss, tip amputation on both hands, Raynaud's/Buerger's disease, bipolar disorder, alcohol abuse, and cannabis abuse. (*Id.*). The ALJ found that Plaintiff's alleged limitations of bursitis, hip pain, and ankle pain did not qualify as severe impairments. (R. 18-19). The ALJ concluded that Plaintiff's impairments did not meet or equal any of the listings that would satisfy Step Three. (R. 19-21).

The ALJ found that Plaintiff retained the RFC to perform light work, but with the following non-exertional limitations:

- Plaintiff must have the option to alternate sitting and standing every hour but remain on task;
- She can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs but never climb ladders, ropes, or scaffolds;
- She is capable of reading newspaper and book print, viewing a computer monitor, and discerning the size and shape of small objects such as nuts, bolts, and screws;
- She can frequently handle, defined as gross manipulation, and work with large objects such as boxes, buckets, and brooms;

- She is capable of frequent fingering, defined as fine manipulation of items no smaller than the size of a ballpoint pen;
- She must avoid concentrated exposure to extreme cold and wetness and must avoid unprotected heights or moving mechanical parts;
- She is able to understand, remember, and carry out simple instructions and perform simple routine tasks such as those akin to the requirements of work at SVP 1 or SVP 2 levels;
- She requires a low stress environment defined as no production rate pace work, but rather goal-oriented work with occasional and routine changes in work setting – routine change being that which does not require alteration to the work method; and
- She is capable of occasional contact with supervisors, the public, and co-workers.

(R. 21).  In so finding, she found partially persuasive the opinion of consultative examiner James Goodyear, M.D. (R. 710-27), and those of state reviewing agents Henry Scovern, M.D. (R. 106-10), and Paul Fox, M.D. (R. 126-30).  (R. 28-30).   After determining that Plaintiff had no past relevant work at Step Four of the process, the ALJ used a vocational expert ("VE") to determine whether Plaintiff could do jobs that exist in significant numbers in the national economy at Step Five.  (R. 31-32).  The ALJ promulgated a number of hypothetical questions to the VE to determine whether there were other jobs Plaintiff could perform, setting forth different combinations of functional limitations.  (R. 63-68).  In response to the question setting forth the limitations ultimately included in the RFC, the VE testified that Plaintiff could perform the occupations of marker, order caller, and photocopy machine operator.  (R. 31-32, 66-67). Accordingly, the ALJ found that Plaintiff could do jobs that exist in significant numbers in the national economy and that she, therefore, was not disabled.  (R. 32).

## IV.  Legal Analysis

Plaintiff argues that the ALJ erred in finding that she retained the ability to handle and finger frequently, rather than just occasionally.  Specifically, she asserts that the ALJ's

consideration of the opinion evidence did not properly consider differences in those opinions regarding her manipulative capacity. The Commissioner does not dispute that the ALJ's analysis failed to account for these key distinctions in the opinion evidence, but rather, argues that the error was harmless. The Court agrees that an error occurred but disagrees that it was harmless. Accordingly, the Court will remand for further consideration consistent with this Order.

As noted above, the ALJ found Plaintiff to be limited to light work with additional non-exertional limitations, including a limitation to frequent handling and fingering. In so doing, she found partially persuasive the opinion of Dr. Goodyear, the consultative examiner, and those of state reviewing agents Drs. Scovern and Fox. The ALJ noted that Dr. Goodyear had opined that Plaintiff was limited to occasional handling, fingering, and feeling (R. 28, 719), but ultimately found that this part of the opinion was not supported by or consistent with his examination findings that Plaintiff had only mild finger tenderness, that her finger amputation sites were well-healed, and that Plaintiff maintained the ability to use a zipper, button, and tie, although the activities were protracted in duration and Plaintiff reported finger pain while doing them. The ALJ also noted that Dr. Goodyear had found that Plaintiff had "intact hand and finger dexterity." (R. 29, 715). She concluded that a restriction in the RFC to frequent handling and fingering adequately accounted for Dr. Goodyear's findings. (R. 30).

The ALJ then considered the opinions of Drs. Scovern and Fox, also finding them to be partially persuasive. She noted that Dr. Scovern opined that Plaintiff had manipulative limitations including handling and fingering bilaterally. She further asserted that Dr. Fox's opinion was consistent with Dr. Scovern's in this regard. (R. 30). However, as the parties both acknowledge, this is not accurate. Though not stated by the ALJ, Dr. Scovern limited Plaintiff to frequent handling and fingering, consistent with the ALJ's ultimate RFC findings. (R. 109). Dr.

Fox, however, limited Plaintiff to occasional handling and fingering, inconsistent with the RFC but consistent with the opinion of Dr. Goodyear. (R. 129). The ALJ does not acknowledge or discuss this difference and appears to treat the opinions as both being consistent with a limitation to frequent handling and fingering.

This distinction was material, as the VE testified that a hypothetical individual with the RFC as stated could perform the jobs of marker, order caller, and photocopy machine operator. (R. 66-67). However, when the ALJ altered the hypothetical to limit Plaintiff, *inter alia*, to occasional handling and fingering, the VE responded, "The only position that would fit within that hypothetical, Your Honor, would be that of a surveillance system monitor, which is unskilled, SVP of 2, sedentary exertion." (R. 68). Therefore, according to the VE, if Plaintiff's manipulative capacity was limited to an occasional, rather than a frequent basis, she would not be able to perform the jobs that the ALJ found she could perform and on which she ultimately based her Step Five findings. Given the ALJ's failure to acknowledge or discuss that the state reviewing agents differed on this crucial issue rendered her consideration of this evidence insufficient, especially in light of the fact that the other opinion in the record contradicted the ALJ's findings on this point.

The Commissioner contends, nonetheless, that this mistake was harmless because the VE did, in fact, find that a hypothetical individual limited to occasional handling and fingering could still perform the position of surveillance system monitor. "An error is 'harmless' when, despite the technical correctness of an appellant's legal contention, there is also 'no set of facts' upon which the appellant could recover." *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011). *See also Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) (holding that remand is not

necessary where the error would not affect the outcome of the case).  The Court cannot find that no set of facts would allow Plaintiff to prevail in this case.

First, even assuming that the VE's testimony would support a finding that Plaintiff could perform the job of surveillance system monitor even if the ALJ, upon re-evaluation of the evidence, determined that she was limited to occasional handling and fingering, it does not necessarily demonstrate that Plaintiff would be able to perform a significant number of jobs so as to satisfy Step Five.  The SSA's regulations explain how such a determination is made:

> How we determine the existence of work. Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications.  Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered work which exists in the national economy.  We will not deny you disability benefits on the basis of the existence of these kinds of jobs.  If work that you can do does not exist in the national economy, we will determine that you are disabled.  However, if work that you can do does exist in the national economy, we will determine that you are not disabled.

20 C.F.R. § 416.966(b).  Although "there is no bright line rule as to [what] number of jobs are 'significant,'" *Rhine v. Saul*, No. 4:19-CV-1781, 2021 WL 254066, at *18 (M.D. Pa. Jan. 26, 2021), the Court finds that the VE's testimony here is insufficient in any event.

Courts, including the Third Circuit Court of Appeals, have stated that it is sufficient at Step Five for an ALJ to identify at least one occupation with a significant number of jobs in the national economy that the claimant can perform.  *See Wilkinson v. Comm'r of Soc. Sec.*, 558 Fed. Appx. 254, 256 (3d Cir. 2014); *Ahmad v. Comm'r of Soc. Sec.*, 531 Fed. Appx. 275, 277–78 (3d Cir. 2013); *Harrold v. Berryhill*, No. 2:17-CV-592, 2018 WL 658869, at *6 (W.D. Pa. Feb. 1, 2018); *Wyman v. Colvin*, No. CV 15-5721 (JBS), 2016 WL 9446650, at *9 (D.N.J. Aug. 1, 2016); *Johnson v. Colvin*, No. 2:14-CV-78, 2014 WL 6063435, at *4 (W.D. Pa. Nov. 12, 2014).

However, although the vocational expert in each such case identified only a single occupation that the claimant could perform, he or she set forth a specific number of such jobs that would be available.  Here, the VE merely stated that the only position that would fit within the relevant hypothetical was that of surveillance system monitor, without indicating how many jobs would be available either locally or in the national economy.  (R. 68).  The ALJ accepted the VE's response without asking for clarification or asking any follow-up questions.  In light of the restrictive RFC in this case, a certain amount of erosion to the number of surveillance system monitor jobs available to Plaintiff was not just possible but probable.  The Court cannot merely assume that the number of jobs that the VE might have identified would be sufficient to constitute work that exists in significant numbers in the national economy, especially considering that the Commissioner has the burden of showing that Plaintiff is capable of performing such work.  *See* 20 C.F.R. §§ 416.920(a)(4)(v) & (g), 416.960(c).  Hence, remand is necessary.

      This is particularly appropriate given that the basis for the ALJ's finding that Plaintiff could perform other work in the national economy at Step Five was that she could perform the jobs of marker, order caller, and photocopy machine operator, all of which require the ability to handle and finger frequently.  (R. 31-32).  The ALJ did not rely upon, or even mention in the decision, the surveillance system monitor position.  Her decision, therefore, was based on the finding that Plaintiff could perform these three jobs, a finding that, based on the Court's findings herein, is not supported by substantial evidence.  Pursuant to the *Chenery* doctrine, "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *SEC v. Chenery Corp.,* 318 U.S. 80, 87 (1943).  *See also Fargnoli,* 247 F.3d at 44 n.7.  Were the Court to find that the record demonstrates that Plaintiff

could perform a job not relied upon by the ALJ, it would be substituting its own grounds for those of the Commissioner.

In this regard, the Court finds persuasive the reasoning in those cases addressing the similar situation where the ALJ erroneously decided the case in the Commissioner's favor at Step Four of the sequential process, but the record arguably demonstrated that had the ALJ continued, he or she would have resolved the case in the Commissioner's favor at Step Five in any event. *See*, *e,g.*, *Baines v. Astrue*, 781 F. Supp. 2d 228, 237 (D. Del. 2011) (acknowledging that "erroneous step four findings can be rendered harmless by the identification of other work consistent with a plaintiff's RFC at step five," but noting that "the ALJ never completed the alternative analysis by making the requisite findings regarding the vocational expert's testimony and its potential application to [the claimant]."); *Lamb v. Colvin*, No. 1:13-CV-00137 GSA, 2014 WL 3894919, at **6-7 (E.D. Cal. Aug. 4, 2014) (holding that, although an alternative Step Five analysis by the ALJ may have rendered the Step Four error harmless, the ALJ engaged in no such analysis and that the court, therefore, could not simply perform the Step Five analysis that the ALJ had not done); *Garcia v. Colvin,* No. 12-C-4191, 2013 WL 3321509, at *11 (N.D. Ill. June 28, 2013) ("We reject the Commissioner's argument that the ALJ's step four finding is harmless error given the VE's testimony that [the claimant] could perform other work in the national economy. Not only are there other errors requiring remand here, the ALJ did not make a step five finding and we cannot simply 'fill that gap.'") (quoting *Getch v. Astrue,* 539 F.3d 473, 481 (7th Cir.2008)); *Bell v. Barnhart,* No. 01-4112-JAR, 2002 WL 31178223, at *2 (D. Kan. Sept. 30, 2002) ("The Commissioner, and not the Court, should have the opportunity to make a Step Five determination in the first instance.").

Although those cases involved situations where the ALJ had rested his or her decision on a Step Four determination later found to be in error, the same rationale applies here, where the ALJ's Step Five finding is not supported by substantial evidence and where the ALJ has made no alternative Step Five findings that might render the error harmless. As courts have explained, the harmless error doctrine does not permit the Commissioner to simply ask the court to accept an alternative basis for a decision, when no such alternative basis was raised at the administrative level, regardless of the fact that the record might support such a basis. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). The Court, in finding the VE's testimony that Plaintiff could perform other work in the national economy consistent with an RFC free from the tinge of the ALJ's error in evaluating the opinion evidence, would not be finding a harmless error, but rather engaging in its own Step Five analysis.

This is very different than a case such as *Walck v. Colvin*, No. 1:15-CV-01265-CCC-GBC, 2017 WL 3405115 (M.D. Pa. Mar. 17, 2017), *report and recommendation adopted sub nom. Walck v. Berryhill*, No. 1:15-CV-1265, 2017 WL 3394399 (M.D. Pa. Aug. 8, 2017). There, the ALJ's error in finding that the claimant could perform certain jobs without properly accounting for the frequency of the sit/stand option was harmless because the VE had testified that the claimant could perform those very jobs regardless of the frequency. *See id.* at *8. Here, the Court cannot find that the ALJ's error in determining that Plaintiff could perform the jobs of marker, order caller, and photocopy machine operator was harmless because the record does not, in fact, demonstrate that Plaintiff could perform these jobs regardless of the error. At best, the record could support an alternative finding that Plaintiff could do a different job based on a different RFC. The ALJ, and not the Court, needs to perform this analysis in the first instance.

While the Court is not required to order remand "in quest of a perfect opinion" the harmless error doctrine is one that the Court employs cautiously when reviewing the Commissioner's final decisions. *Hayes v. Berryhill*, No. 3:17-CV-00648, 2018 WL 3596858, at *7 (M.D. Pa. June 20, 2018), report and recommendation adopted, No. 3:17-CV-648, 2018 WL 3584698 (M.D. Pa. July 26, 2018) (citing *Moua v. Colvin*, 541 Fed. Appx. 794, 798 (10th Cir. 2013)). Here, such caution requires that the case be returned to the ALJ to appropriately consider the evidence, including the opinion evidence, in formulating Plaintiff's RFC and in determining whether, based on that RFC, Plaintiff could perform sufficient work to satisfy the requirements of Step Five.

**V.     Conclusion**

Accordingly, the Court remands this matter for further consideration of Plaintiff's RFC and the hypothetical question to the VE, including further analysis of the impact of the opinion evidence, and of what jobs, if any, Plaintiff can perform at Step Five of the sequential analysis.

s/Alan N. Bloch
United States District Judge

ecf:         Counsel of record